

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | § |
| | § |
| vs. | § CRIMINAL ACTION NO.: 3:21-201-MGL-1 |
| | § |
| JEFFREY ALBERT SCOTT, | § |
| Defendant. | § |

**MEMORANDUM OPINION AND ORDER
GRANTING GOVERNMENT'S MOTION
TO INVOLUNTARILY MEDICATE DEFENDANT**

## I. INTRODUCTION

Pending before the Court is the government's motion to involuntarily medicate Defendant Jeffrey Albert Scott (Scott). Having carefully considered the motion, the response, the oral argument, the record, and the applicable law, it is the judgment of the Court the government's motion will be granted.

## II. FACTUAL AND PROCEDURAL HISTORY

A grand jury indicted Scott of three counts of malicious damage to a building by means of fire, in violation of 18 U.S.C. § 844(i), and two counts of destruction of letter boxes and mail, in violation of 18 U.S.C. § 1705.

Defense counsel moved for a psychiatric exam for Scott, which the Court granted by consent. After his evaluation, the Court entered a consent order determining by a preponderance of the evidence that Scott was presently suffering from a mental disease of defect that interfered

with his ability to understand the proceedings against him and assist counsel in his own defense, specifically schizophrenia. The Court thus held he was incompetent to stand trial under 18 U.S.C. § 4241(d). The Court ordered Scott committed to the custody of the Attorney General to determine whether there is a substantial probability that Scott would become competent to stand trial in the foreseeable future, as contemplated by 18 U.S.C. § 4241(d)(1).

During his four-month evaluation, Scott remained incompetent to stand trial. Dr. Sarah L. Hampton (Hampton) wrote a report describing Scott's condition and stating that his symptoms are unlikely to improve without antipsychotic medication. She opined that medication is likely to render Scott competent.

Her report sets forth a proposed treatment plan that recommends administration of various medications that are used in the treatment of psychotic disorders such as schizophrenia. They would be administered in the lowest effective dose, and the doctors would adjust the regimen as they determine Scott's reaction to the medications and doses. Although staff would attempt for Scott to take the medication orally, they would use injection if necessary.

Consistent with Hampton's report, the government filed this motion, and Scott responded. The Court held a hearing, which Scott attended by video. Hampton and Dr. Shawn Rice (Rice) testified, and the Court heard argument from the parties. At the conclusion of the hearing, the Court stated it intended to grant the government's motion by written order. Accordingly, the Court, having been fully briefed on the relevant issues, will now adjudicate the motion.

### III.     STANDARD OF REVIEW

Incompetent defendants have a "significant liberty interest in avoiding the unwanted administration of antipsychotic drugs[.]" *Washington v. Harper*, 494 U.S. 210, 221 (1990). But,

this interest is not absolute and must be balanced against the interests of the government and the safety of the community. *Riggins v. Nevada*, 504 U.S. 127, 135 (1992).

The Supreme Court has set forth a four-part test that the government must satisfy before involuntary medication is allowed to restore an incompetent defendant to competency before trial. *Sell v. United States*, 539 U.S. 166, 178–79 (2003). The Fourth Circuit has articulated these elements as follows:

> First, the government must show that "*important* governmental interests are at stake" and that special circumstances do not sufficiently mitigate those interests. *Sell*, 539 U.S. at 180 . . .. Second, involuntary medication must significantly further the government's interests by making it "substantially likely to render the defendant competent to stand trial" and "substantially unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel" at trial. *Id.* at 181 . . .. Third, the involuntary medication must be necessary to further the government's interests, and less intrusive means must be unlikely to achieve substantially the same results. *Id.* And last, the court must conclude that the administration of drugs is medically appropriate and in the patient's best medical interests in light of [his] medical condition. *Id.*

*United States v. White*, 620 F.3d 401, 410 (4th Cir. 2010).

The government must prove each of the four elements by clear and convincing evidence. *United States v. Watson*, 793 F.3d 416, 420 (4th Cir. 2015). The Fourth Circuit has stated that it has set "a deliberately high standard for the government to satisfy before it may forcibly medicate solely to render an inmate competent to stand trial." *United States v. Bush*, 585 F.3d 806, 814 (4th Cir. 2009).

**IV.     DISCUSSION AND ANALYSIS**

    **A.     *Whether important governmental interests are at stake and whether special circumstances fail to mitigate those interests***

The government contends it has an important governmental interest in prosecuting Scott's alleged crimes and protecting the public from future danger. Scott maintains these interests are mitigated by the fact that Scott has nearly served his expected sentence.

The Supreme Court explained in *Sell* that the government has a compelling interest in prosecuting an individual accused of a "serious" offense. 539 U.S. at 180. Most courts have looked to the maximum penalty to determine whether a charge qualifies a "serious[.]" *See, e.g.*, *United States v. Evans*, 404 F.3d 227, 238 (4th Cir. 2005) (considering the maximum penalty to determine seriousness).

Section 844(i) contains a mandatory minimum sentence of five years and a maximum sentence of twenty years. Section 1705 contains a maximum sentence of three years. Scott thus faces a minimum of five years and up to twenty-three years of incarceration.

The Court determines this qualifies as a serious crime such that there are important government interests at stake in this case. *See Evans*, 404 F.3d at 238 (holding that a charge with a maximum penalty of ten years imprisonment constituted a serious crime). It next turns to whether any specific circumstances mitigate those interests.

In considering whether there are sufficient mitigating circumstances, the Court may consider various factors, such as the length of pretrial detention, whether the charged crime is violent, and whether the defendant presents a risk of harm. *White*, 620 F.3d at 413. Additionally, the Court may consider whether the defendant is likely to be civilly committed such that the risks to the public would be diminished. *Sell*, 539 U.S. at 180.

First, Scott has been detained for about thirty-four months, or just under three years. As stated above, although the statutory maximum for the Section 1705 counts is three years, Scott faces a mandatory minimum of five years for the 844(i) charges. His likely guideline sentence would be at least five years, as well. *See* U.S.S.G. § 2K1.4 (explaining the base offense level for arson is twenty-four, which would result in a minimum guideline range of fifty-one to sixty-three months for a criminal history category of I).

Although it is unknown how long it will take to restore Scott to competency such that the proceedings can move forward, the Court determines it is likely to be less than two years, and, in any event, the Court will monitor Scott's progress as time goes on to determine if reevaluation of the circumstances will become necessary in the future. Thus, the Court determines the length of pretrial detention fails to mitigate the government's interests.

Second, as to whether the charged crime is violent and whether Scott presents a risk of harm, Scott is accused of a dangerous crime that put lives in danger. Arson is particularly dangerous because of the uncontrollable nature of fire, which can spread beyond the initial location.

Moreover, Hampton testified that Scott's alleged crimes are related to his mental illness. Specifically, Scott evidently suffers from delusions that people are tampering with his mail. Without treatment, there is a likelihood that Scott will commit other similar crimes.

He thus presents a continued danger to the community, and these factors fail to mitigate the government's interest and weigh in favor of involuntary medication.

Finally, the Court takes no position on whether civil commitment is likely. Even if civil commitment may occur, however, the circumstances in this case fail to mitigate the important government interests present here.

The government has thus established this element by clear and convincing evidence.

### B.     Whether involuntary medication is substantially likely to render Scott competent to stand trial and whether it is substantially unlikely to result in side effects that will interfere with his ability to assist counsel

The government insists that medication is likely to render Scott competent to stand trial, and that the risk of side effects is minimal. Scott posits that the government has failed to show that the medication is substantially unlikely to result in side effects that will interfere with his ability to assist counsel.

The government must show that the proposed treatment plan has a substantial likelihood of rendering Scott, specifically, competent to stand trial. *Evans*, 404 F.3d at 242.

Hampton's report sets out an outline of the proposed treatment plan sufficiently detailed to meet this standard. Hampton and Rice attested that the medication is likely to reduce Scott's psychotic symptoms, such as hallucinations, mood disturbance, disorganized thought processes, and delusions. Rice added that, in his experience, the proposed treatment plan has helped about seventy percent of his patients.

And, Scott previously received medication to treat his schizophrenia during a prior period of incarceration, which proved effective. Hampton acknowledged that sometimes medication for schizophrenia can decrease in effectiveness as a patient ages, but testified this depended on the person. She still opines that medication is likely to return Scott to competency. Although it is possible that Scott's schizophrenia is now treatment-resistant, the Court determines medication is substantially likely to help him and restore his competency.

Moreover, although there are possible side effects to the medication, Hampton and Rice testified that such side effects are substantially unlikely and, for the most part, treatable with additional medication. And, if such side effects, like fatigue and inability to concentrate, do occur,

the Court determines they are substantially unlikely to interfere with Scott's assistance of defense counsel in his criminal case.

Thus, the government has also established this element by clear and convincing evidence.

### C. Whether involuntary medication is necessary to further the government's interests, and whether there are any less intrusive alternatives

The government avers that Scott's symptoms are chronic and unlikely to spontaneously improve or improve with less drastic measures. Scott fails to address this element.

As Hampton and Rice explained, less intrusive treatments, such as psychotherapy and education, are unlikely to achieve the same results as medication. Although these strategies may prove helpful in addition to medication, they would be insufficient by themselves.

Accordingly, the government has established this element by clear and convincing evidence, too.

### D. Whether involuntary medication is medically appropriate and in Scott's best interests

The government avouches medication is medically appropriate because doctors would recommend the same course of treatment irrespective of competency proceedings. Scott counters that he could be treatment resistant, and that he has an interest in bodily autonomy.

Both Hampton and Rice testified that, if Scott were their private patient, they would recommend the same course of treatment. They explained that medication is the main treatment for schizophrenia.

The Court is convinced that medication is in Scott's best interests. Beyond the government's interests in prosecuting this case, the Court hopes that medication will improve Scott's health such that he can safely reintegrate into society upon acquittal, service of any sentence, or other resolution of this case.

The government has thus established this element by clear and convincing evidence, as well.

*****

The Court will thus extend the period of time that the "Attorney General shall hospitalize [Scott] in a suitable facility . . . for an additional reasonable period of time until" his mental condition is so improved that he is restored to competency and his criminal case may proceed, or the case is otherwise disposed of according to law.  *See* 18 U.S.C. § 4241(d)(2) (explaining the Court may extend the hospitalization beyond the initial four months if there is a substantial probability the defendant will attain competency in a reasonable period of time).

## V.     CONCLUSION

Wherefore, based on the foregoing discussion and analysis, it is the judgment of the Court the government's motion for involuntary medication, ECF No. 67, is **GRANTED**.  The medical staff at the BOP may involuntarily medicate Scott as is necessary to return him to competency, as described in the reports and through testimony, including medication to address any side effects.

Scott's medical providers at the BOP shall submit status reports every ninety days regarding Scott's progress, and shall immediately notify the Court if at any time Scott is determined to be competent to proceed.  If medication fails to render Scott competent within one year, the Court will reconsider the propriety of continued involuntary medication.

**IT IS SO ORDERED.**

Signed this 12th day of September 2023, in Columbia, South Carolina.

s/ Mary Geiger Lewis  
MARY GEIGER LEWIS  
UNITED STATES DISTRICT JUDGE